UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

**KRISTY HUNTER,**  }
  }
  **Plaintiff,**  }
  }
v.  }        Case No.: **4:16-CV-0592-RDP**
  }
**CAROLYN W. COLVIN,**  }
**Commissioner of the Social Security**  }
  **Administration,**  }
  }
  **Defendant.**

## MEMORANDUM OF DECISION

Plaintiff Kristy Hunter brings this action pursuant to Title XVI of Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of Supplemental Security Income ("SSI"). *See also*, 42 U.S.C. 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.   Proceedings Below**

Plaintiff filed her application for SSI benefits on December 31, 2011, alleging disability dating back to July 19, 2008. (R-47). The Social Security Administration ("SSA") initially denied Plaintiff's application on April 24, 2012. (R-43). Plaintiff then requested a hearing on May 7, 2012, which Plaintiff received on June 17, 2013. (R-47-56). Plaintiff asked for a continuance to obtain representation, which Administrative Law Judge George W. Merchant ("ALJ") granted. (R-47). Plaintiff failed to appear at the hearing set for October 3, 2013 and the

ALJ sent Plaintiff a Notice to Show Cause. (R-124). Plaintiff responded that she mistakenly believed she had obtained representation that she thought would attend in her place. (R-224). The ALJ reset the hearing for January 29, 2014. (R-127). However, inclement weather caused this hearing to be canceled and rescheduled for April 21, 2014. (Ex. B2A). Plaintiff failed once again to appear for rescheduled hearing, and that led the ALJ to send a second Notice to Show Cause to Plaintiff. (R-151-52). Plaintiff responded by indicating that appearing at a hearing would trigger her anxiety and that she did not wish to appear, and stated that the ALJ should decide the case based on the existing record. (R-153).

In his decision, dated August 8, 2014, the ALJ determined that Plaintiff did not qualify as disabled under Section 1614(a)(3)(A) of the Act for the adjudicated period of December 31, 2011 to August 8, 2014. (R-44). The Appeals Council denied Plaintiff's request for review of the ALJ's decision on February 17, 2016 and rendered that decision the final decision of the Commissioner. Plaintiff, who was 38 at time of filing, alleged disability on the grounds of anxiety disorder with agoraphobia and panic attacks, severe depression, migraine headaches, fibromyalgia, dizzy spells with syncope, blurry vision, asthma, bilateral knee pain, morbid obesity, and hypertension. (R-49). Plaintiff possesses no relevant work experience. (R-55).

John Muller, Ph.D., administered a psychological evaluation to Plaintiff on January 5, 2005. (R-258-62). Dr. Muller diagnosed Plaintiff with panic disorder with agoraphobia and the record shows that she continued to seek treatment intermittently for anxiety-related issues. (R-258, R-271-87, R-320-30). Jack Bentley, Jr., Ph.D., administered a more recent psychological evaluation of Plaintiff on April 29, 2012, diagnosing her with depressive disorder and affirming the earlier diagnosis of Dr. Muller. (R-297-300). However, the ALJ afforded minimal weight to Dr. Bentley's testimony given that he is not licensed in the State of Alabama and primarily based

his conclusions on Plaintiff's physical ailments—to which his background in psychology would not appear to render him qualified to speak. (R-51-52).

The medical evidence on Plaintiff points to hypertension and obesity, as her treating Nurse Practitioner noted that Plaintiff possessed a BMI of 70.5. (R-377-83). The generally accepted measure of obesity is a BMI over 30. (SSR 02-1p). Plaintiff's medical record shows intermittent medical treatment for hypertension, particularly from Dr. Stephanie Morgan, M.D. (R-340-352). Plaintiff only offered evidence of sporadic treatment for anxiety-related issues and they often involved a specific traumatic event. (R-271-87). This includes an October 6, 2011 trip to the emergency room for an anxiety attack stemming from the recent death of Plaintiff's grandmother. (R-271-87). Philip Rogers, a Certified Registered Nurse Practitioner with Quality of Life Health Services, Inc., reported that Plaintiff appeared oriented to time, place, person, and situation when he treated her and displayed the "appropriate mood and affect," despite noting her reported anxiety problems. (R-293-96). Dr. Morgan similarly noted Plaintiff's alertness and ability to provide proper medical history. (R-348). Plaintiff presented herself to DeKalb Regional Medical Center complaining of nausea, vomiting, and diarrhea on March 13, 2014. (R-367-76). During this visit, Dr. Ashley Stoke, M.D. noted that Plaintiff's behavior appeared proper for her age and did not report any noticeable signs of anxiety. (R-373).

Plaintiff's medical record includes a diagnosis for carpal tunnel syndrome and fibromyalgia. (R-50). However, the record does not also show any sustained treatment for these conditions nor does it indicate that these ailments in any way significantly impaired the RFC of Plaintiff. (R-50-51). Plaintiff's record points to a difficult childhood - Plaintiff's parents divorced when she was at a young age and she lived with her grandparents following a complex custody battle. (R-257). Though Plaintiff reported no sexual or physical abuse, she does claim that she

faced significant verbal abuse at the hands of her grandfather whom she claimed would yell often and hit the wall. (R-257). Plaintiff said that her grandfather's temper put her in an anxious state of mind. (R-257). Plaintiff possesses a tenth grade education. (Tr. 55, 195-201, 204-05).

Robert Estock, M.D., reviewed Plaintiff's medical records for the State Agency on April 24, 2012, and found that Plaintiff's mental and physical condition only caused "moderate" restrictions on her day-to-day activities with no episodes of de-compensation. (R-305-06). Dr. Estock noted Plaintiff has some problems with memory, concentration, and understanding along with swelling in the feet and constant pain. (R-305-06). He opined that Plaintiff may experience limitations on social interactions but would face no significant limitations when it came to work-related decisions or the ability to follow instructions. (R-307-09).

## II.     ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).    Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20

C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ found that Plaintiff has performed no substantial gainful activity since December 11, 2011 and has a combination of the following "severe" impairments: hypertension, morbid obesity, panic disorder with agoraphobia, and depression. (R-49). These findings satisfy the first two steps of the process. The ALJ then found that Plaintiff did not "have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart B, Appendix 1." (R-51). The ALJ reached this conclusion based on the lack of opinions on the record from medical experts which would

support a diagnosis matching the listings. (R-51). The ALJ also noted that, despite the fact that by law, obesity can exacerbate an associated impairment to the point of meeting a listing, no medical evidence exists to demonstrate that Plaintiff's obesity actually affects her other ailments. (R-51).

The ALJ further determined that, based on the record, Plaintiff possesses the RFC to perform light work as defined in 20 C.F.R. § 416.967 (b). (R-54). The ALJ found that Plaintiff's conditions would not significantly impair her ability to "occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl." (R-54). Plaintiff maintains the ability to perform jobs with limited requirements for complex mental functions and limited memorization according to the ALJ. (R-54). The ALJ further holds that Plaintiff can retain and follow "simple instructions" and maintain limited contact with others provided she can avail herself of breaks every two-hours. (R-54). Based on the testimony of the Vocational Expert along with the Medical-Vocational Guidelines, the ALJ determined that Plaintiff could hold jobs such as laundry worker, cleaner, and dishwasher, of which there exist 184,000, 220,000, and 272,000 national jobs respectively. (R-55-56). Thus, the ALJ ruled that Plaintiff could partake in substantial gainful activity and determined that she did not meet the requirements necessary to claim SSI benefits. (R-56).

### III.   Plaintiff's Argument for Reversal

Plaintiff's counsel, who was reatined following the ALJ's decision, offers four arguments for reversal. (*See generally* Doc. #9). First, she argues that the ALJ failed to accord proper weight to the opinion of Dr. Bentley, the consulting psychologist for the Commissioner. Second, she asserts that the Appeals Council failed to consider Dr. Wilson's report dated after the ALJ's

decision. Third, she contends that the ALJ decision was not based on substantial evidence. Finally, she claims that she did not receive a full and fair hearing. (Doc. #9 at 1-2).

## IV.  Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V. Discussion

After careful review the court concludes the ALJ's decision is supported by substantial evidence and the law was correctly applied.

**a. The ALJ Properly Weighed the Opinion of Dr. Jack Bentley, Jr., Ph.D.**

Plaintiff's first argument against the ALJ's ruling rests on the ALJ's decision to accord minimal weight to the testimony of Dr. Jack Bentley, Ph.D. (Doc. #9 at 17). Plaintiff contends that the ALJ chose to substitute his own "hunch" or lay opinion for that of the Commissioner's selected medical expert. (Doc. #9 at 17). Plaintiff attempts to draw parallels between this case and the Seventh Circuit ruling in *Wilder v. Chater,* 64 F.3d. 335 (7th Cir. 1995). That contention is off the mark. In *Wilder*, the court stated:

> We are led to consider with a degree of suspicion the administrative law judge's decision to go against the only medical evidence in the case, that of a psychiatrist not retained by the applicant but appointed by the administrative law judge…the facts on which the administrative law judge relied to contradict that evidence are singly and together unimpressive.

*Id.* at 337-38.

Plaintiff also cites *Cooke v. Colvin,* 2016 U.S. Dist. LEXIS 2042, *30-35 (S.D. Ala. 2016), in which the court reversed a denial of benefits because the ALJ ignored a consultative evaluation. (Doc. #9 at 17). The *Cooke* court relied on *Wilder*, and criticized the ALJ in that case for "play[ing] doctor" and rebutting a medical opinion in the absence of contradictory expert testimony. (Doc. #9 at 19-20). Plaintiff also draws similarities between this case and *Hunter v. Astrue,* 2012 U.S. Dist. LEXIS 85566, *11-12 (N.D. Ala. June 20, 2012), along with three other cases from the Northern District of Alabama. (Doc. #9 at 20). Plaintiff argues the rationale behind Judge Guin's reversal of benefits denial (based on the ALJ's decision to go against the only existing medical testimony in the case) is equally applicable here. (Doc. #9 at 20).

Plaintiff further argues that Dr. Bentley's diagnosis supports the 2011 diagnoses of Dr. Stephanie Morgan and Dr. Stephen Jones (Doc. #9 at 21), thus deserving significant weight. Plaintiff further contends that for the SSA to send a "claimant to a psychological evaluation with a psychologist who is not an acceptable medical source" constitutes not ordering a psychological exam at all. (Doc. #9 at 21). Plaintiff contends that the ALJ bore the responsibility to order an acceptable psychological evaluation, given the significance of Plaintiff's mental impairments to her claims to disability. (Doc. #9 at 21). The ALJ's duty became even more heightened, Plaintiff argues, when she was unable attend the hearings. (Doc. #9 at 22). Plaintiff relies on *Reeves v. Heckler,* 734 F.2d 519, 522 n.1 (11th Cir. 1984), in which the Court held that the Commissioner has the duty to order a consultative examination if one is needed to make an informed decision. (Doc. #9 at 22). Plaintiff also relies on *Marbury v. Sullivan,* 957 F.2d 837, 840-41 (11th Cir. 1992) in arguing that "a hearing officer may not arbitrarily substitute his own hunch or intuition for the diagnoses of a medical professional." (Doc. #9 at 22).

Plaintiff's argument has its holes. According to 20 § CFR 404.1527(e) and 416.927(e), the following questions do not constitute medical issues and the Commissioner possesses the final decision-making authority in addressing them:

1. Whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings;

2. What an individual's RFC is;

3. Whether an individual's RFC prevents him or her from doing past relevant work;

4. How the vocational factors of age, education, and work experience apply; and

5. Whether an individual is "disabled" under the Act.

Opinion proffered on these issues, "even when offered by a treating source[,]…[are] never … entitled to controlling weight or given special significance." SSR 96-5p. Thus, the ALJ had the final discretion regarding the weight to give Dr. Bentley's testimony 20 C.F.R. § 416.912(b)(2).

A careful analysis of the current case reveals why *Wilder* is inapposite here. In *Wilder,* the court ruled that the ALJ had replaced the only existing medical testimony in the case with his own personal feelings and criticized him for not offering valid reasoning for downplaying the medical opinion. Plaintiff fails to acknowledge that here, unlike in *Wilder*: (1) the ALJ offered multiple reasons for assigning Dr. Bentley's testimony minimal weight; and (2) that Dr. Bentley's testimony did not constitute the only medical testimony. The ALJ specifically noted that he accorded Dr. Bentley's opinion minimal weight as a result of his lack of qualifications. (R-47-49). Dr. Bentley only possessed licensing as a counselor and not as a practicing psychologist; furthermore, his opinion was based on Plaintiff's physical ailments, an area over which as a therapist he lacks the background to speak. (R-47-49).

Dr. Bentley's medical opinion remains far from the only medical opinion offered in the case. The ALJ also based his decision on the existing medical record, the opinion of Dr. Stephanie Morgan, the opinion of Dr. Muller, and the opinion of Dr. Robert Estock. This renders the supposed parallel between the current case and *Reeves v. Heckler* irrelevant, as Plaintiff made the connection based on the ALJ not ordering a psychological consultation. However, *Reeves* clearly states that the Commissioner has the duty to order an evaluation if and only if the other evidence remains insufficient. (Doc. #9 at 22). The ALJ received significant testimony outside of Dr. Bentley's, and was qualified to determine how much weight to give Dr. Bentley's opinion.[1]

---

[1] Emphatically, it is Plaintiff's burden to prove she is disabled. So, while she has criticized the ALJ for not obtaining a more recent psychological examination (Dr. Bentley rendered his profile a full two years and four months before the decision), she was free to proffer a more up to date assessment to the ALJ. (Doc. #13 at 6).

Because the ALJ accorded proper weight to the opinion of Dr. Bentley, this ground for reversal of the ALJ's decision is due to be denied.

### b. The Appeals Council Properly Addressed the Opinion of Dr. Wilson

Plaintiff maintains that the Appeals Council's decision not to overturn the ALJ's ruling constitutes "legal error" because it "erroneously refuse[d] to consider evidence." (Doc. #9 at 23) (citing *Washington v. SSA,* 806 F.3d 1317 (11th Cir 2015)). However, the mere fact that evidence arises after the ALJ's decision does not mean that evidence has chronological relevance. (Doc. #9 at 24).

Here, Dr. David R. Wilson, Ph.D. conducted a psychological evaluation of Plaintiff on December 8, 2014. (Doc. #9 at 23). But the record is clear that the Appeals Council did not discount Dr. Wilson's testimony merely because it came after the date of the ALJ's ruling, but rather because the evidence does not clearly speak to the relevant time period of December 31, 2011 through August 8, 2014. (Tr. 2). That is, Dr. Wilson did not make it clear in his testimony that the evidence he presented bears any relevance on the period in which Plaintiff claims to hold a disability; this ground for reversal of the ALJ's decision is due to be denied.

### c. Substantial Evidence Exists to Support the ALJ's Ruling

Plaintiff further argues the ALJ's decision is based on insufficient evidence. (Doc. #9 at 27). In particular, Plaintiff argues that the ALJ lacked substantial evidence to deny benefits because: (1) the ALJ failed to grant Dr. Bentley's opinion sufficient weight; (2) the ALJ submitted hypotheticals based on an inaccurate RFC to vocational experts who had never met Plaintiff; and (3) the Appeals Council failed to note the inaccuracy of the ALJ's description of Plaintiff's RFC in the hypotheticals as a result of its failure to properly address the opinion of Dr.

Wilson. (Doc. #9 at 27). The court has already addressed two of these arguments above, and will not re-explore those here.

As to the argument not yet analyzed, Plaintiff asserts that the ALJ submitted hypotheticals to vocational experts based on an insufficient listing of Plaintiff's impairments. (Doc. #9 at 27). In one of the submitted hypotheticals, the ALJ wrote "[a]ssume that this individual has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can **occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl**." (emphasis added) (R-228-32). The ALJ further characterized Plaintiff as able to handle occasional decision making, minor alterations in schedule, and limited contact with others. (R-228-32).

Plaintiff argues that the ALJ inaccurately characterized her RFC to the vocational experts. *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (noting that for the testimony of a VE "to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.)." (Doc. #9 at 28). Specifically, Plaintiff argues that the ALJ failed to include impairments listed by Drs. Bentley and Wilson. (Doc. #9 at 28). However, an ALJ is called upon to base the RFC decision on all existing evidence—not merely medical opinions (20 C.F.R. § 416.927(d)). Much of what Drs. Wilson and Bentley opine in their medical testimony is not entirely inconsistent with Plaintiff's medical records which show largely normal treatments for physical ailments during the adjudicated period. (R. 55, 293-96, 314-19, 340-62, 377-83). Furthermore, as psychologists, they are not in a position to address the physical well-being of Plaintiff, and this undercuts Plaintiff's contention that they rendered a more holistic account of her RFC. (R. 14). Thus, substantial evidence supports the ALJ's ruling on Plaintiff's RFC. (20 C.F.R. § 416.927(d)). And, it also follows that the hypotheticals

submitted by the ALJ to the vocational experts were proper, as they were based on Plaintiff's impairments that the record actually supports. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999).

### d. Plaintiff Received a Full and Fair Hearing

Finally, Plaintiff argues that the ALJ failed in his duty to ensure that Plaintiff's *pro se* "Waiver of Council" constituted an effective, knowing, and informed agreement to forego attorney representation. (Doc. #9 at 29). The court disagrees. The ALJ informed Plaintiff at the first hearing held on June 17, 2013, that Plaintiff had the right to counsel and advised her to obtain counsel promptly. (Doc. #9 at 29). The ALJ also informed Plaintiff that

> "If [she is] able to find counsel, they should not charge [her] anything up front. The way they're paid, generally, is out of any back benefits, if [she's] allowed benefits. They're paid a portion, up to 25 percent up to [*sic*] $6,000 of that money." (TRANHR 32).

Plaintiff later submitted a written request for the ALJ to hold the hearing without her, explaining that she had not obtained counsel *and felt too personally anxious to attend court*. (R-224). Ultimately, Plaintiff's anxiety also caused her to miss all further scheduled hearings and she remained unrepresented. (Doc. #9 at 29). Plaintiff contends that the ALJ bears a "special duty" to "develop the record" when faced with a *pro se* Plaintiff who possesses little familiarity with hearings procedure and argues that she was prejudiced by lack of counsel. (Doc. #9 at 30).

Here, contrary to her argument on this issue, the ALJ clearly informed Plaintiff of her right to representation at the June 17, 2013 hearing as noted above; he again notified her on at least *three* other occasions when sending Plaintiff "notices of hearings." (R-102, R-104-22, R-128-46). Plaintiff further signed a "Right to Counsel" form dated June 17, 2013. (R-103). Moreover, the ALJ clearly stated during the hearing that Plaintiff would pay an attorney "a portion, up to 25 percent up to [*sic*] $6,000" of any back-benefits distributed. (R-32). The record

establishes that at least four separate attempts were made to inform Plaintiff of her right to counsel, in addition to *what the ALJ clearly stated at the original hearing*. (R-102, R-104-22, R-128-46). Further, the fact that Plaintiff had obtained counsel prior to the first hearing and pursued retention of her present counsel following the ALJ's decision, is further indication that Plaintiff did, in fact, properly understand the process. (R-31).

Because Plaintiff received a full and fair hearing, this ground for reversal of the ALJ's decision is also due to be denied.

**VI.    Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed.  A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this January 24, 2017.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE